IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RONALD VAN DER HORST,           )
                                )
         Plaintiff,             )
                                )
    v.                          )   No. 06 C 5614
                                )
LAURENCE A. VAN DER HORST,      )
et al.,                         )
                                )
         Defendants.            )

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Janine Van der Horst's ("J. Van der Horst") motion to dismiss. This matter is also before the court on Plaintiff Ronald Van der Horst's ("R. Van der Horst") motion for judgment on the pleadings against Defendant Laurence A. Van der Horst ("L. Van der Horst"). For the reasons stated below, we grant J. Van der Horst's motion to dismiss, deny R. Van der Horst's motion for judgment on the pleadings, and dismiss the instant action for lack of subject matter jurisdiction.

## BACKGROUND

R. Van der Horst alleges that on June 16, 1999, he loaned $100,000 to L. Van der Horst, his son, for L. Van der Horst to use as a down-payment for the purchase of a house at 1447 West Wolfram Street, in Chicago, Illinois ("House"). R. Van der Horst further alleges that on June 16, 1999, he and his son, L. Van der Horst, signed a loan agreement entitled "Loan and Security Agreement with Balloon Payment" ("First Loan Agreement"). (A. Compl. Par. 8). R. Van der Horst further contends that on July 10, 1999, he loaned his son, L. Van der Horst, and his son's fiance, J. Van der Horst, $400,000 for the closing on the contract to purchase the House and that L. Van der Horst and J. Van der Horst signed another loan agreement with him ("Second Loan Agreement"), in addition to the First Loan. (collectively referred to as "Loan Agreements"). The Loan Agreements allegedly gave R. Van der Horst a security interest in the House, which was meant to secure repayment of the debt. On July 18, 1999, L. Van der Horst and J. Van der Horst allegedly became married and on August 26, 1999, L. Van der Horst and J. Van der Horst allegedly closed on the contract to buy the House using a combination of R. Van der Horst's loan proceeds and other bank loans.

On September 15, 2005, J. Van der Horst allegedly filed a petition for dissolution of marriage against L. Van der Horst. On July 18, 2006, R. Van der Horst allegedly recorded a notice of claim for lien against the House and on August 11, 2006, L. Van der Horst and J. Van der Horst allegedly listed the House for sale with a real estate broker. On December 26, 2007, R. Van der Horst filed an amended

complaint seeking a declaratory judgment in his favor against J. Van der Horst and L. Van der Horst to enforce his lien and security interest in the House for the sum of $500,000.00, principal plus interest accrued through the date of judgment. In the alternative, R. Van der Horst requests that an equitable lien be imposed on the House for the purpose of ensuring payment upon sale of the House. J. Van der Horst moves to dismiss the instant action and R. Van der Horst has filed a motion for judgment on the pleadings against L. Van der Horst.

## LEGAL STANDARD

In ruling on a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must draw all reasonable inferences that favor the plaintiff, construe the allegations of the complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint. *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002); *Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir. 1991). The allegations of a complaint should not be dismissed for a failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also Baker v. Kingsley*, 387 F.3d 649, 664 (7th Cir. 2004)(stating that although the "plaintiffs' allegations provide[d] little detail. . . [the court could not] say at [that] early stage in the litigation that plaintiffs [could] prove no set of facts in support of their claim that would entitle them to relief"). Nonetheless, in order to withstand a

motion to dismiss, a complaint must allege the "operative facts" upon which each claim is based. *Kyle v. Morton High School*, 144 F.3d 448, 454-55 (7th Cir. 1998); *Lucien v. Preiner*, 967 F.2d 1166, 1168 (7th Cir. 1992). Under current notice pleading standard in federal courts, a plaintiff need not "plead facts that, if true, establish each element of a 'cause of action. . . .'" *See Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994)(stating that "[a]t this stage the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint" and that "[m]atching facts against legal elements comes later"). The plaintiff need not allege all of the facts involved in the claim and can plead conclusions. *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002); *Kyle*, 144 F.3d at 455. However, any conclusions pled must "provide the defendant with at least minimal notice of the claim," *id.*, and the plaintiff cannot satisfy federal pleading requirements merely "by attaching bare legal conclusions to narrated facts which fail to outline the bases of [his] claims." *Perkins*, 939 F.2d at 466-67; *Nance v. Vieregge*, 147 F.3d 589, 590 (7th Cir. 1998)(stating that "[p]laintiffs need not plead facts or legal theories; it is enough to set out a claim for relief").

## DISCUSSION

I. Motion to Dismiss

J. Van der Horst argues that the instant action is not ripe for adjudication. The Declaratory Judgment Act allows a federal court to "declare the rights and other legal relations of any interested party seeking such declaration" and that declaration has the full force of a final judgment. 28 U.S.C. § 2201. However, the Declaratory Judgment Act "does not dispense with the Article III case or controversy requirement . . . , nor does it supply the court with subject matter jurisdiction." *Nationwide Ins. v. Zavalis*, 52 F.3d 689, 692 (7th Cir. 1995). As such, before a district court can decide whether a declaratory judgment is appropriate, the court "must first determine whether the court has subject matter jurisdiction, i.e., whether the case presents an 'actual controversy' between the parties." *Basic v. Fitzroy Eng'g, Ltd.*, 949 F. Supp. 1333, 1337 (N.D. Ill. 1996); *see Tobin v. City of Peoria, Ill.*, 939 F. Supp. 628, 634 (C.D. Ill. 1996)(stating that in a declaratory judgment action, the Court "should be 'particularly vigilant' to make certain the case is ripe"). Whether an actual controversy exists under the Declaratory Judgment Act turns on whether "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941). J. Van der Horst contends that the instant action is not ripe for a decision since there is not "'sufficient immediacy' to warrant this court declaring whether or not the Loan Agreements are enforceable and give rise to the plaintiff having lien rights given that the Loan Agreements do not mature until 2009 and there is no 'due on sale' clause or any right to accelerate the repayment dates contained in the agreements." (Mot. 6).

5

R. Van der Horst contends that the instant action is ripe because if J. Van der Horst and L. Van der Horst sold the Home "without paying off" the loans to R. Van der Horst, he would "lose his security interest" in the Home. (Ans. 5). The First Loan Agreement provides that:

> To secure payment of this note to Lender, Borrower grants to Lender a security interest in all property of the undersigned of any kind in the possession of Borrower, including, but not limited to the property located at 1447 West Wolfram, City of Chicago, County of Cook, State of Illinois (hereinafter "Collateral"), whether now existing or arising in the future, whether direct or indirect, whether absolute or contingent or whether due or to become due. However, it shall be understood and is agreed by the undersigned <u>that the mortgagor/bank of the Collateral shall be the only entity which shall take precedence over the Lender's security interest.</u>
>
> <u>Except for the mortgagor/bank of the Collateral</u>, the undersigned agree that this loan and the repayment of this loan shall and will take precedence over and above all debts and liabilities and lien holder's [sic] of or against the Borrower (singular or plural, singularly or combined), whether presently incurred or incurred in the future, including, but not limited to, legal judgements which may be incurred against the borrower (singular or plural, jointly or severally).

(A. Compl. Ex. A)(emphasis in original). The Second Loan Agreement further provides that:

> To secure payment of this note to Lender, Borrowers grant to Lender a security interest in all real and personal property of the undersigned of any kind in the possession of Borrowers, including, but not limited to, the residence and property located at 1447 West Wolfram, City of Chicago, County of Cook, State of Illinois (hereinafter "Collateral"), whether now existing or arising in the future, whether direct or indirect, whether absolute or contingent or whether due or to become due. However, it shall be understood and is agreed by the undersigned <u>that the mortgagor/bank of the Collateral</u>

6

> shall be the only entity or individual which shall take precedence over the Lender's security interest.
>
> Except for the mortgagor/bank of the Collateral, the undersigned agree that this loan and the repayment of this loan shall and will take precedence over and above all debts and liabilities and lien holder's [sic] of or against the Borrowers (singular or plural, singularly or combined), whether presently incurred or incurred in the future, including, but not limited to, legal judgements which may be incurred against the borrowers (singular or plural, jointly or severally).

(A. Compl. Ex. B)(emphasis in original). In addition, the Loan Agreements state that the "Borrower shall not be required to pay any principal or interest whatsoever on the loan herein for a period of ten years" and that the "loan shall . . . be considered a ten year loan and the Principal and interest herein shall be due and payable to Lender in a single lump sum payment" on June 16, 2006, pursuant to the First Loan Agreement, and August 31, 2009, pursuant to the Second Loan Agreement. (A. Compl. Ex. A, Ex. B). Thus, under the Loan Agreements, the principal and interest loaned to J. Van der Horst and L. Van der Horst must either be paid by the dates specified in the Loan Agreements or, if the House is sold, the proceeds shall flow to R. Van der Horst after all proceeds owed are paid to the mortgagor/bank.

R. Van der Horst admits that J. Van der Horst and L. Van der Horst have two options regarding the Home: "[t]hey can keep the property and not pay [R. Van der Horst] until 2009 or they can sell the property and pay off the loans." (Ans. 5). However, such options do not create a current case or controversy before this court. The Loan Agreements do not call for an accelerated payment if J. Van der Horst and

7

L. Van der Horst are no longer married. Further, any proceeds generated if the House is sold do not belong to R. Van der Horst, but rather are first payable under the Loan Agreements to the mortgagor/banker and then to R. Van der Horst. In addition, R. Van der Horst's claims that J. Van der Horst and L. Van der Horst may commit fraud if the house is sold are merely speculative. *See, e.g., Whitemore v. Arkansas*, 495 U.S. 149, 158 (1990)(stating that "allegations of possible injury do not satisfy the requirements of Article III"). R. Van der Horst's fear that his son and former daughter-in-law may fail to follow the terms of the Loan Agreements at some future point in time does not create sufficient immediacy for this court to issue a declaratory judgment. Based on the foregoing, this court lacks subject matter jurisdiction to adjudicate the instant action due to lack of ripeness and we grant J. Van der Horst's motion to dismiss.

II. Claims against L Van der Horst

The "first duty in every case" in federal district court for a judge is to "independently" determine whether or not the court has subject matter jurisdiction. *See Belleville Catering Co. v. Champaign Market Place, L.L.C.*, 350 F.3d 691, 692-94 (7th Cir. 2003). We have already stated that the Declaratory Judgment Act "does not dispense with the Article III case or controversy requirement . . . , nor does it supply the court with subject matter jurisdiction." *Nationwide Ins.*, 52 F.3d at 692 (citing *Lawline v. American Bar Ass'n*, 956 F.2d 1378, 1387 (7th Cir. 1992)).

As state above, the instant action against J. Van der Horst is not ripe for adjudication since there is not "sufficient immediacy" that warrants this court to address the declaratory action sought by R. Van der Horst against J. Van der Horst regarding the Loan Agreements. The claims in the amended complaint against L. Van der Horst are identical to those claims against J. Van der Horst. As we stated above, such claims based on R. Van der Horst's fears that J. Van der Horst and L. Van der Horst may someday breach the Loan Agreements does not create sufficient immediacy for this court to issue a declaratory judgment. Therefore, the instant action is not ripe for adjudication and we deny R. Van der Horst's motion for judgment on the pleadings, and dismiss the instant action for lack of subject matter jurisdiction.

## CONCLUSION

Based on the foregoing analysis, we grant J. Van der Horst's motion to dismiss, deny R. Van der Horst's motion for judgment on the pleadings, and dismiss the instant action for lack of subject matter jurisdiction.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: April 10, 2007